**FILED**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**February 5, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

CLEARONE COMMUNICATIONS,
INC., a Utah corporation,

        Plaintiff-Appellant,

v.

LONNY BOWERS,

        Defendant-Appellee,

and

ANDREW CHIANG; JUN YANG;
WIDEBAND SOLUTIONS, INC., a
Massachusetts corporation; VERSATILE
DSP, a Massachusetts corporation;
BIAMP SYSTEMS, an Oregon
corporation,

        Defendants.

No. 11-4163
(D.C. No. 2:07-CV-00037-TC-DN)
(D. Utah)

CLEARONE COMMUNICATIONS,
INC., a Utah corporation,

        Plaintiff-Appellee,

v.

LONNY BOWERS,

        Defendant-Appellant,

and

ANDREW CHIANG; JUN YANG;
WIDEBAND SOLUTIONS, INC., a

No. 12-4062
(D.C. No. 2:07-CV-00037-TC-DN)
(D. Utah)

Massachusetts corporation; VERSATILE
DSP, a Massachusetts corporation;
BIAMP SYSTEMS, an Oregon
corporation,

Defendants.

CLEARONE COMMUNICATIONS,
INC., a Utah corporation,

Plaintiff-Appellee,

v.

LONNY BOWERS; ANDREW
CHIANG; JUN YANG; WIDEBAND
SOLUTIONS, INC., a Massachusetts
corporation; VERSATILE DSP, a
Massachusetts corporation, BIAMP
SYSTEMS, an Oregon corporation,

Defendants,

and

DONALD BOWERS,

Interested Party-Appellant.

Nos. 12-4004 & 12-4037
(D.C. No. 2:07-CV-00037-TC-DN)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The cases are therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

- 2 -

Before **GORSUCH**, **ANDERSON**, and **EBEL**, Circuit Judges.

_____

The latest chapters in this long and rancorous litigation have found their way to us.  Rather than belabor the whole story, suffice it to say that years ago ClearOne sued Lonny Bowers and others for misappropriating its trade secrets.  In time, the company won a money judgment and a permanent injunction barring Lonny from possessing any of ClearOne's protected secrets.  *See ClearOne Commc'ns, Inc. v. Bowers* (*Bowers I*), 643 F.3d 735 (10th Cir. 2011).  Even so, Lonny proved undaunted:  he continued to sell products containing ClearOne's technology all the same, this time aided by Donald Bowers (Lonny's father), and a company registered to Donald.

Unsurprisingly, this development ensured the old legal proceedings begat new ones.  Many, in fact.  In one, ClearOne sought and received contempt orders and monetary sanctions against the Bowerses and their co-defendants.  In another, ClearOne was awarded the attorney fees it incurred in having to defend the appeal in *Bowers I*.  And in yet another, the district court first authorized ClearOne to seize Lonny Bowers's computers and remove its protected information but later rescinded that order in the face of mounting costs ClearOne wasn't willing to bear.  In the appeals now before us, ClearOne appeals some of these post-judgment dispositions, Lonny and Donald others.

We start with No. 11-4163. In this appeal, ClearOne challenges the district court's dissolution of its order permitting the company to seize, retain, and search Lonny's computers. This particular part of the story began when ClearOne learned that Lonny had filed papers containing its trade secrets in a separate court action. The company quickly sought a temporary restraining order (TRO) allowing it to seize Lonny's computers and scrub off its protected information once and for all. ClearOne projected the whole business would take five to ten days, and the company said it would pay to hire the necessary experts. *See* Proposed Order 2-3, ¶ 4(c)-(d), Exh. M to Mem. in Support of Ex Parte Order, ECF No. 2231-2. The district court granted the requested order and took the company up on its offer to pay: all the actions the company sought permission to undertake, the court said, would come at its own expense. Amended Rule 65 Order (Seizure Order) 4-5, ¶ 8, ECF No. 2251; *see also* Fourth Order Regarding Review Protocol for Seized Electronic Media 7, ECF No. 2503.

Quickly, two things became clear. First, Lonny's computers contained plenty of ClearOne's protected information. Second, extracting that information would prove a tricky business: some information was encrypted, other information looked like it could be protected by the attorney-client or joint-defense privilege, and all of Lonny's devices contained a staggering number of files. Rather than finishing neatly in five to ten days as promised, the matter dragged on for months as the parties and

the court struggled to find some cost-effective way to deal with the problem. All the while, ClearOne's analysts continued to retain possession of Lonny's computers.

In the end and despite investing many hours and efforts, the court could find no accommodation that satisfied ClearOne's costs concerns. And this, the district court found, left it with no choice but to dissolve the TRO. The court made clear it took this action only reluctantly, as "the result of the inability to formulate an appropriate protocol for the review of the electronic material to isolate ClearOne's Protected Information at an expense which ClearOne is willing to bear," not because "the Seizure Order, and the procedures related thereto, lacked merit." Fifth Order Regarding Review Protocol for Seized Electronic Media & Add'l Findings 2-3, ECF No. 2533.

ClearOne argues that the district court erred in dissolving its TRO without first ensuring all of the company's proprietary information was first scrubbed from Lonny's computers. There was, however, no reversible error. To know why, all one needs to know is the name of the order the district court dissolved: it was a *temporary* restraining order. TROs are supposed to be just what the name suggests — temporary. They may be (as here) issued ex parte, without notice to the adverse party, in order to meet an emergent problem. *See* Fed. R. Civ. P. 65(b). But their normal life span is prescribed by rule as just a fleeting fourteen days, after which they may give way to preliminary injunction proceedings where notice and an opportunity to be heard is afforded both sides. Fed. R. Civ. P. 65(b)(2). For

whatever reason, the process prescribed for transforming a TRO into a preliminary injunction never took place in this case and the TRO just lingered on and on. Now, to be sure, district courts are empowered to extend the life of a TRO under certain circumstances. *Id.* And, just as surely, Lonny eventually had a chance to participate fully in the extended TRO proceedings in this case. So perhaps one might argue that we should reimagine this TRO as a sort of quasi-preliminary injunction. But however conceived, a TRO or PI is supposed to be a *temporary* or *preliminary* measure. And by anyone's reckoning this particular TRO lived an unusually long and rich life, coming within days of an anniversary. We discern no reversible error in dissolving such a long-lived "temporary" measure, especially when the party seeking its maintenance has stated it isn't willing to bear the necessary costs, costs it originally offered to undertake.

ClearOne replies that the standard for dissolving a TRO is much higher than the district court or we imagine. Citing *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932) and *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248 (1968), ClearOne represents a court must have proof of changed circumstances before altering or dissolving an injunction. But these chestnuts discuss only the circumstances in which it's appropriate to modify or dissolve a *permanent* injunction. In our case, of course, the district court never purported to dissolve the permanent injunction it issued at final judgment. That order remains alive and well: only a post-judgment *temporary* order has passed away at last.

- 6 -

At this point in the proceedings ClearOne shifts ground, seeking to attack less the dissolution of the TRO than the terms on which it was first issued. The company complains that the district court placed the financial burden of scrubbing Lonny's computers on it rather than Lonny. But, again, ClearOne *invited* this financial burden and it's unclear to us how it might be fairly heard to complain that it received exactly what it sought. *See United States v. Burson*, 952 F.2d 1196, 1203 (10th Cir. 1991) ("[T]he Invited Error Doctrine . . . prevents a party who induces an erroneous ruling from being able to have it set aside on appeal.").

Finally, ClearOne complains that the dissolution of the TRO leaves Lonny in possession of its trade secrets. But there are many ways to skin a cat, many remedies available to make a defendant whole for its losses; ClearOne has not suggested to us that the *only* way to enforce its judgment is to keep on life support a TRO that by all rights should have faced a natural death long ago.

That said, Lonny's response brief in ClearOne's appeal bears difficulties all its own. He requests an increase in the bond that ClearOne posted in connection with the TRO and he seeks to challenge the initial issuance of the TRO. But in both instances Lonny seeks to "enlarge the appellee's rights" and to "diminish the appellant's," something he may only do through an appeal or cross-appeal, not an appellee's response brief. *See Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1008 (10th Cir. 2008). Neither at this late date would an appeal be timely in

any event.  *See* Fed. R. App. P. 4(a)(1)(A) (notice of appeal must generally be filed within 30 days after the order appealed).

Now to be sure Lonny and Donald *do* pursue appeals of their own, though they pursue altogether different matters in those proceedings.

We turn, then, to No. 12-4062.  Here, Lonny asks to be relieved from the original judgment against him — and from the contempt and other orders that followed from his defiance of that judgment.  He argues we should grant him this relief because the district court "hid" information on a sealed docket and was otherwise biased against him.  The district court rejected Lonny's arguments, pursued under Rule 60(b) and 28 U.S.C. § 455, and so must we.

Though we generally regard court records sealed from public scrutiny with a healthy skepticism, this was a trade secrets case where public dissemination of certain information could have defeated the whole point of the suit.  Besides and more to the point, the record before us reveals the public's disadvantage wasn't Lonny's:  as best we can tell from what the parties have shared with us, his counsel was served with and made fully aware of all sealed materials through trial.  Neither has Lonny shown any prejudice arising from the district court's continuation of its sealing practices after trial when he took on his cause pro se.  For example, Lonny complains that he was unaware of the first ex parte hearing in which ClearOne sought a TRO to address his defiance of the court's judgment.  But, of course, a district court may hold ex parte proceedings when a party requests a TRO.  *See* Fed. R. Civ. P.

65(b)(1). Moreover, the district court *denied* ex-parte relief in that particular proceeding, instead choosing to set a date for both sides to be heard. That adversarial proceeding, in turn, eventually culminated in the contempt order against Lonny, an order we have already reviewed and affirmed. *See Bowers I*, 643 F.3d at 774-75.

However that may be, Lonny says the sealed docket, the holding of ex parte TRO hearings, and various adverse rulings at least demonstrate he faced an "angry" district judge, one who held a grudge against him, should have recused, and should now have its orders and judgment rescinded. He levels similar complaints at the magistrate judge. But we've long explained that adverse "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and neither do "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). As our discussion above suggests, there is no evidence in this record of any disqualifying bias, only diligent judges trying to manage an especially challenging litigation, one made so in no small part because of Lonny's refusal to abide by a lawful judgment.

Finally, Lonny objects that in ruling on his Rule 60(b) motion the district court failed to enter specific findings of fact and conclusions of law as he requested under Fed. R. Civ. P. 52(a). But findings and conclusions simply are not required in

deciding a Rule 60(b) motion. *See* Fed. R. Civ. P. 52(a)(3); *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 118 (5th Cir. 2008).

Turning now to No. 12-4004, we find Donald Bowers challenging an award of attorney fees in the district court. After discovering that Lonny had defied the judgment against him and did so with the help of various other defendants, ClearOne sought and received a contempt order and monetary sanctions. The award covered certain of its attorney fees ($184,506.52) and was issued against Lonny, Donald's company, and various other defendants. The award did *not* cover Donald, but only because he had filed for bankruptcy shortly before the contempt proceeding and the court feared further proceedings against Donald might run afoul of the statutory stay of proceedings against those who invoke the protection of the bankruptcy laws.

Soon enough, however, the bankruptcy court lifted the stay of proceedings against Donald and the district court found him in contempt too. The court held Donald jointly and severally liable for the fee award it had already issued and assessed a separate amount ($22,743.88) against Donald individually.

Donald argues that the district court violated the automatic stay by making him jointly and severally liable for costs incurred while his automatic stay was in effect. But whenever those fees were incurred, the district court *assessed* this award against Donald only *after* the bankruptcy court lifted the automatic stay. And Donald cites no authority holding that this is in any way prohibited by law. Moreover, it may be that the district court could have brought Donald to account for his contempt even

while the automatic stay was in place, so long as its "main purpose [was] to punish a contemnor and uphold the dignity of the court" rather than to effect the collection of a judgment. *Kukui Gardens Corp. v. Holco Capital Grp., Inc.*, 675 F. Supp. 2d 1016, 1026-27 (D. Haw. 2009) (collecting cases); *see also SEC v. Bilzerian*, 131 F. Supp. 2d 10, 14-15 (D.D.C. 2001) (stating that Congress could not have meant for bankruptcy stay to strip the federal courts of their inherent power to enforce their orders in civil contempt proceedings), *aff'd*, 75 F. App'x 3 (D.C. Cir. 2003). "[T]he bankruptcy process cannot be invoked to immunize contumacious behavior." *Am. Online, Inc. v. CN Prods., Inc.*, 272 B.R. 879, 881 (E.D. Va. 2002).

Alternatively, Donald argues that he cannot be subject to joint and several liability for the contempt award because the Utah Liability Reform Act ("ULRA"), Utah Code Ann. § 78B-5-818(3), abolished joint and several liability. But Utah law does not apply — the contempt award was grounded in the district court's inherent power to enforce its orders, not in Utah law.

Finally, Donald objects that ClearOne provided insufficient detail to support the contempt award. But this court has already rejected other defendants' similar challenges to this award, *see Bowers I*, 643 F.3d at 780-81, and we see no basis that might justify a different result here.

Turning at last to No. 12-4037, Donald Bowers again challenges an award of attorney fees. This time the relevant fee award stems from *Bowers I*. After successfully defending that appeal, ClearOne moved under the Utah Uniform Trade

- 11 -

Secrets Act ("UUTSA"), Utah Code Ann. § 13-24-5, for the attorney fees it incurred. This court granted the motion and remanded the matter for the district court to determine the appropriate amount to award to ClearOne. A magistrate judge ordered an award of $19,706.50 against Donald and the other appellants, jointly and severally, and $8,648 against Donald individually. The district court affirmed.

Before us, Donald notes that this particular award *was* made under the UUTSA and asserts (once again) that the ULRA has abolished joint and several liability in tort actions under Utah law, making this award unlawful. Donald's argument on this score may or may not have merit. We simply cannot tell and a procedural snafu is part of the problem.

To understand the procedural problem, we start with Fed. R. Civ. P. 54(d)(2)(D). That rule says a district judge "may refer a motion for attorney's fees to a magistrate judge . . . as if it were a dispositive pretrial matter." Subsection (b) of Rule 72, in turn, addresses a magistrate judge's authority in connection with dispositive matters, pretrial or otherwise. It provides for a magistrate judge to "enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). A party may object to the recommended disposition, *id.* 72(b)(2), and if it does so, the district court exercises *de novo* review as to any objected-to portion of the recommendation, *id.* 72(b)(3). By contrast, in *non-dispositive* matters, subsection (a) of Rule 72 permits a magistrate judge to "promptly conduct the required proceedings and, when appropriate, issue a written

order stating the decision." Fed R. Civ. P. 72(a). A party may object to the order, and if it fails to do so, it "may not assign as error a defect in the order not timely objected to." *Id.* If a party files timely objections, the district judge "must consider [them] and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

That background is necessary to appreciate the unusual posture of this case. Here, the district court had in place a standing order referring only *non-dispositive* post-trial matters to the magistrate. *See* Docket Text Order, ECF No. 1592. We are not aware of any referral of ClearOne's motion for appellate-level fees in particular, or of dispositive motions in general. And, as we have seen, such a referral would permit only a report and recommendation in any event. Despite this, the parties proceeded as if the motion for appellate fees had been referred as a non-dispositive matter. The magistrate took up the motion and issued an order (something not provided for in dispositive motions practice) and the district court issued an order affirming (something else not provided for in dispositive motions practice).

ClearOne's arguments only highlight our procedural tangle without identifying any way out. The company urges this court to hold that Donald has waived his ULRA argument because he failed to file an objection to the magistrate judge's order. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). But ClearOne does not reveal which subsection of Rule 72 it relies upon or which of the two (very different) standards of review it believes should apply. Even apart from

that, the magistrate's order did not caution Donald about the effect of failing to file objections. And we do not usually apply our waiver rule in dispositive matters when a *pro se* defendant isn't warned about the need to file timely objections. *See Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005).

In light of these circumstances, we are confounded. On one hand, we are reticent about prolonging these already elongated proceedings. On the other hand, we do not wish to tread unwarily into what turns out to be a significant question of state law without ensuring a full and proper vetting in the district court first. In the end, we believe the best way out is to vacate the order under review and to remand for the district court to reconsider the issues under the proper procedure for dispositive matters. On remand, we ask the court to analyze carefully whether the ULRA allows a joint-and-several award of attorney's fees under the UUTSA. We have located no Utah precedent addressing the interplay between the UUTSA and the ULRA. And though some Utah cases state that the ULRA abolished joint and several liability, others continue to apply it to specific types of claims. *See, e.g.*, *Diversified Holdings, L.C. v. Turner*, 63 P.3d 686, 692, 698 (Utah 2002) (defendants were jointly and severally liable for fraud damages, but not for negligence damages). Moreover, in *Jedrziewski v. Smith*, the Utah Supreme Court explicitly left open the question whether the ULRA applies to intentional torts. 128 P.3d 1146, 1151 (Utah 2005). On the other hand, the Sixth Circuit Court of Appeals recently concluded that similar provisions of the Michigan Tort Reform Act ("MTRA") apply to intentional torts,

including a claim under the Michigan Uniform Trade Secrets Act ("MUTSA"). *See Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 414 (6th Cir. 2006). In conducting its analysis, the district court is of course free to consider whether to certify one or more questions of law to the Utah Supreme Court.

Beyond the challenges we've already mentioned, Donald's briefing in this particular appeal touches on a host of other topics, in many cases repeating complaints presented in other appeals. None, however, warrants development here let alone reversal. Still, at the end of this (latest part) of the saga, it may be helpful to summarize where things stand.

In No. 11-4163 we affirm the district court's order dissolving the TRO and ordering the return of Lonny Bowers's computers.

In No. 12-4062, we affirm the district court's order denying Lonny Bowers's motion under Rule 60(b) and 28 U.S.C. § 455.

In 12-4004, we affirm the district court's order awarding contempt fees against Donald Bowers.

In 12-4037, we vacate the district court's order regarding appellate-level attorney fees awarded against Donald Bowers and remand for further proceedings as outlined above.

ClearOne's Motion to Strike Appellant's Opening Brief and to Dismiss Consolidated Appeals Nos. 12-4004 & 12-4037 and its Motion to Strike Donald

- 15 -

Bowers's Motion for Leave Based on Non-Compliance with Fed. R. App. P. 25(d)(1)(B) are denied.

The Bowerses' respective Motions for Leave to Provide a Single Supplement to Appellate Briefs are granted, but only to the limited extent that the appendices in these appeals are supplemented with the transcript of the ex-parte hearing held July 14, 2009. In all other respects those motions are denied.

Entered for the Court


Neil M. Gorsuch
Circuit Judge